Good morning, Your Honors, and may it please the Court, Doug Keller on behalf of Mr. Argueta. The District Court reversibly erred in this case when it applied the improper legal standard for the specific intent element of attempted re-entry. In attempted re-entry cases, this Court has been clear that the government must prove that the defendant intended to be free from official restraint. That means that the government must prove that the defendant did not intend to enter custody. Here, however, the District Court expressly disagreed with that standard. It said that the intent to enter custody was not relevant, and instead all that mattered was that the defendant had the intent to physically cross into the United States. And that alone is reversible error. And the question becomes, what's the appropriate remedy? Typically, when a fact finder is misinstructed on the controlling legal standard, this Court remands for a new trial. Here, there's no need to remand for a new trial because we already know how the District Court would find under the proper standard. The District Court told Defense Counsel in this Court that it had a reasonable doubt about whether Mr. Argueta intended to enter custody. Well, the government's burden is to show that he entered with an intent to be free of official restraint. He could have entered with an intent to be free of official restraint, but also he could have intended, if he weren't taken into custody, to just proceed to Los Angeles and enter free of official restraint. If the facts support the possibility of either, what's the situation for your client? Well, I think if the facts didn't, in fact, support either inference, and I conceded in my brief, and I'll concede here that they did, the fact finder could have found either. But here, the District Court, after reviewing the evidence, watching Mr. Argueta's post arrest statements, the District Court found that Mr. Argueta came here to turn himself in because he was concerned about these Mexican gangsters who he delusionally believed were gangsters. So, the District Court thinks that factual finding is clearly erroneous, and I don't think it is. This Court has to remand with instructions for the District Court to enter a judgment of acquittal on the substantive count, and then it needs to remand on the supervised release violation for the Court to apply the lower burden of proof. What about the delusional state? What effect does that have on the intent issue? I think in this case, all it did was provide an explanation for what Mr. Argueta was actually thinking. If someone came into this country believing, let's say, correctly that someone was chasing them, and they wanted to enter custody to avoid those very real individuals, that would also be a defense. In this case, it just happens to be that Mr. Argueta's methane-induced psychosis led him to have this false belief, but nevertheless this very genuine belief that he was being chased. And what about the fact that his projected release date is the 16th of July? Is that right? I believe so, Your Honor. I think it might be a little later in July, but that's correct. With respect to the substantive count, he's entitled to a judgment of acquittal to get that conviction off his record right now. As far as revocation hearing, if that happened before he was released, there would be another hearing on that, but I don't think there's a prior release because the substantive count should be removed. What does the evidence say about whether Mr. Argueta intended to enter custody? The main piece of evidence to support that specific aspect of the belief are, one, Mr. Argueta's claims that he was calling 911 on the way to the border, demonstrating that he was coming here to receive... Calling 911 in the United States? In Mexico. According to Mr. Argueta's delusion... I understand he was physically in Mexico. Would 911 have gone to Mexican authorities or would have gone to American authorities? I don't know. I'm not sure it matters. I think it's only relevant insofar as it establishes Mr. Argueta's belief that he believed that he wanted protection from U.S. authorities. So he wasn't coming over here to live freely amongst us, but instead he believed that he would receive protection from U.S. authorities. Did he see the Border Patrol agents at the same time they saw him? There's no evidence in the record either way. What we do know is the first Border Patrol agent saw Mr. Argueta. It's not clear in the record how far away he was, but what is clear is that he wasn't particularly close to Mr. Argueta because he then had to call a second Border Patrol agent. And did Argueta, as soon as he was alerted by the agent, to the agent's presence, did he walk towards the agent? He was called twice, so the second agent approached him, called his name out. Mr. Argueta did not turn around, although he was just at this point just walking. Because the record then suggests an ambiguity as to whether Argueta intended to end up in U.S. custody. In other words, if he thought that the only way that he could escape his pursuers was to be under official restraint by the United States and therefore protected from anybody who was after him, that's different from saying, I've got two options here, both of which are good. I can come into the United States and if nobody stops me, I'm in. And I'm therefore away from whoever is pursuing me. And if they stop me, it's the theory of the second best. I get to go to U.S. jail and they'll protect me there. But if that, if he has a mixed motive, then he can still be convicted under this statute, can't he? I don't think so. I think that since the government had the burden to prove that he had the intent to be free from official restraint, to the extent that Mr. Argueta sort of had a mixed motive or an unclear motive, I think ultimately the government bears the burden and so they But I mean, I agree with your Honor's general point that the evidence did sort of point in different directions. But that's why, of course, we defer to the fact finder who heard the evidence, who saw Mr. Argueta's post-arrest confession on video. And after hearing all this evidence, he determined that the balance of the evidence showed that there at least was a reasonable doubt about whether Mr. Argueta intended to enter custody. What are you citing for that? A couple of different places. So to be clear, he said, I think he was, I have a reasonable doubt about these people coming after him and that that may have been the fact. And I have doubt, I have a doubt that the defendant came over for the purposes of violating the law. Are you saying that's a finding that his sole purpose in coming over was to seek, to actually seek official restraint? Yes, that's correct. I mean, I'll concede. But hardly a finding. That's a statement about, he was, the district court was focused on the defense of duress. And he wasn't applying the appropriate standard, in my opinion, of Lombero. But I don't think there's a clear finding that he didn't have, as Judge Bybee posited, a mixed purpose. And Lombero makes it clear because in that case, the government didn't even try to prove it. It had a different understanding of what the law was. So the opinion emphasizes that there was no evidence put forward to show anything other than he was seeking official restraint. That's right, Your Honor, but two people... So I don't think your answer, I'm not sure I agree with your answer that if there were a mixed finding that he had both purposes in mind, that that would violate at least the Lombero. Well, two things, Your Honor. One, even if that is all right, at the very least, we still get a remand for the district court to apply the proper standard. Well, that may be. But you were saying that you want judgment as a matter of law, then? That's right. And I do think we're entitled to that. I can't point to a single statement in the transcript where Judge Burns clearly says, I have a reasonable doubt that your client had the intent to enter custody. But I think if you look at the totality of the hearing, that's sort of what it led up to. When Judge Burns said, I have a doubt about your client's motive, motive was constantly sort of the shorthand for the matter of practicality. When the judge isn't applying the governing standard, assuming we agree with your argument, then to say, well, we can extrapolate out of his statements offered for a different purpose. I think he was offering those statements to essentially facilitate appellate review. And that's what he expressly said, that he was making these sort of alternative findings to make it clear to this court that he thought this case entirely turned on this issue of motive versus intent. And so I think he was telling this court that to the extent the law is as I think it is, he made findings under that standard. The court has no further questions. No, and I'll allow you to close. Good morning, your honors. May it please the court, Francis DiGiacco on behalf of the United States. In this case, the United States did not ensure that the lower court made a specific finding that Mr. Arguetta had the specific intent to enter free from official restraint. However, that error was harmless in light of the fact that Mr. Arguetta did indeed have the specific intent to enter free from official restraint. Are you conceding, sir, that the trial court applied the wrong standard? Yes, your honor. And given that error, and given the court's law as Mr. Arguetta concedes, that error should be looked at as if there were erroneous jury instruction. Did you make that an express concession in your briefing? We did not, your honor. Why not? Your honor, I think that the court, the course of the record that the lower court did distinguish Lumbera to a great extent, also made note of footnote three in Lumbera that Lumbera should only apply in rare or extremely rare factual scenarios in which there is no evidence whatsoever of an intent other than to enter into custody. And it's the United States position that there is evidence that Mr. Arguetta intended to enter free from official restraint. And you're conceding here that the district court applied the wrong standard. Yes, your honor. And did you say that in your brief? Your honor, we did not say that specifically in our brief explicitly. Yeah, it would be helpful to the court if we don't have to tease it out of your implicit argument. Yes, your honor. To concede it, concede it up front. If it's some late, last minute decision, that's different. But we do take your briefs as written. Yes, your honor. I appreciate that. And I apologize. However, under the harmless error standard, it is clear beyond a reasonable doubt that the conviction would have been the same absent the error as this court held in U.S. v. Garacidas Ulibarri when a specific intent instruction was not even given in an attempted 1326 case. Because of the overwhelming nature of the evidence that showed specific intent to enter free from official restraint, this court found that that error was harmless. And the same holding should apply here. First and foremost, with the overwhelming evidence, Mr. Arguetta entered about a mile and a half from the nearest port of entry. He entered in a remote location where, as one of the agents testified, it would have been a roughly 50-50 chance that anyone had even seen him cross the fence into the United States. Well, what do you make of the court statement that I read back just to counsel who's arguing the other side of the coin, saying the district court actually found reasonable doubt about what you're saying is overwhelmingly established. He said he has doubt about whether he came over to violate the law. Your honor, I think I assume that he, in fact, was looking for, under his delusion and the like. Why wouldn't we just return this to the district court, and if you're right, he can declare himself on the proper standard and not have us trying to parse the evidence when we have that somewhat ambiguous statement. Your honor, to the extent that this court finds that statement, or any of the statements made by the lower court regarding any reasonable doubt or doubt that it carried are ambiguous, to the extent that it is finding remanding for the lower court to make a decision consistent with this court's law is a fine result from the position of the United States. However, the reasonable doubt statements that are in the record, as Mr. Keller conceded to you just a few minutes ago, there's not a statement that says, I have a reasonable doubt about the specific intent to go into custody. And, in fact, in looking at the statements and looking at the context throughout, as the court makes statements regarding reasonable doubt, it repeatedly refers to the delusion that Mr. Arguetta advanced at the intent to leave Mexico, but it does not demonstrate his intent to enter custody once into the United States. And so the reasonable doubt statements, the first one, reasonable doubt about Mr. Arguetta's motive, is couched within a discussion of Mr. Arguetta's alleged delusions, and that, as the lower court found, that it was laboring under those delusions. The second statement about a doubt regarding the purpose of Mr. Arguetta's intent to enter custody, and, in fact, that would make sense given that the lower court did not believe that violating the law included an intent to be free from official restraint and not to enter into custody. Going further in the record, at other places, there's repeatedly, at E.R. 9, there's a doubt about the delusion at the time. At E.R. 27, there's a doubt about the delusion that Mr. Arguetta was suffering. At E.R. 40, there's a reasonable doubt about him being in a delusional state, and there are countless other references to reasonable doubt about delusion. And that delusion, as the defense stated at the lower court level, only regards Mr. Arguetta's motive for leaving Mexico, that he was running away from a perceived threat, that he was suffering from a delusion that made him believe that people were out to kill him. However, once in the United States, he didn't have any reasonable doubt statements about that specific intent to enter free from official restraint. In fact, the evidence that supports that is the fact that once he crossed, Mr. Arguetta immediately started heading north. Agent Alvarado, who was the first Border Patrol agent to witness him, saw him heading north and continued to walk away from him. Agent Schwinn, who was the second Border Patrol agent, stopped his vehicle within 20 feet of Mr. Arguetta at 945 in the morning, broad daylight, in the middle of the desert, where we'd expect dust to be kicking up, the sound of the tires coming to a stop, the sound of them driving in the desert, would have alerted Mr. Arguetta to the presence of Border Patrol. Then Agent Schwinn calls out once and twice. The first time, Mr. Arguetta said, oh, thank God, Border Patrol's here. Somebody can protect me. In fact, he was walking at the time. He wasn't even running. So by the time he entered the United States, he had escaped, in his mind, this delusional threat that he perceived in Mexico. And further, there was no testimony. There were no post-arrest statements. There were no evaluated Mr. Arguetta, and there were no statements at the trial court that Mr. Arguetta intended to enter custody. And in fact, all of the evidence that Mr. Arguetta cites in his brief only supports the fact that he wanted to leave Mexico, not the fact that he wanted to go into the United States and into United States custody for protection. You said that the district court didn't accept that he was delusional. No, Your Honor, the district court, it appears from the record that the district court did accept that Mr. Arguetta was delusional. Okay, I misunderstood. And I apologize if I misspoke. Mr. Arguetta's factual statements that he feared persecution and torture in Mexico, he feared gang members, that's intent to leave Mexico. That he called U.S. authorities while he was in Mexico, as the court noted, that's not even clear that he was intending to call U.S. authorities. But even so, it appears that he was calling as a victim, and victims don't typically call so that they can enter into custody. And in fact, at the time he was calling in Mexico, he had no reason to believe that he would be prosecuted for an offense of crossing into the United States. The fact that he was walking doesn't show that he wanted to go into custody. And in fact, and finally, the declining offer to go into Mexico, the statement he made is, do what you gotta do. That's far from a statement that Mr. Arguetta intended to go into custody. And it's far from the statements that were made by the defendant in Lumbera, who came over the fence, walked up to a border patrol agent and said, I want to see an immigration judge. I want to go back to jail. Those types of statements were never made by Mr. Arguetta. And in fact, his acquiescence to being arrested at the point at which a border patrol agent had intercepted him already, arguably he had already committed the offense at that time. But then when given the option of going back to Mexico, where he perceived a threat to his life, or going into U.S. custody, he didn't choose to go into U.S. custody. He didn't have the specific intent to enter U.S. custody. He just didn't want to go back to Mexico. And as the court noted, at that point, he was left with his only option, which was to enter U.S. custody. And given that evidence, it is clear that this was harmless error, that beyond a reasonable doubt, the court would have found the exact same result and would have found that Mr. Arguetta had a specific intent to enter free from official restraint. However, if this court finds ambiguity in the statements of the court, the United States would ask that it remand for a decision by the court based on the record in applying the law in Lumbera. And if the court has no further questions, I will submit. Thank you. Thank you, Mr. DiCiocco. Thank you. Mr. Keller? Just three quick points, Your Honors. First, the government's arguing harmless for the first time at the podium. And in this court's recent case in Brooks, it's made clear that it'll only sue a sponte review for harmlessness in extraordinary circumstances. I don't think this is that extraordinary case. And on harmlessness, certainly Judge Burns didn't think that this was an overwhelming case for the government. That's why he asked this court to decide expressly whether the intent to enter custody was a defense. Second, the government wants to read all of Judge Burns' comments about having a reasonable doubt to be just about doubt about delusion. But elsewhere, Judge Burns made it clear that he didn't have any doubt at all that Mr. Arguetta was suffering from delusions. And that's on ER 27. Yeah, but the fact that he's got delusions doesn't tell us why he wanted to come into the United States. No, I... Are you arguing that that's an impairment such that he can't form a specific intent? No, I'm not. I'm just more making that comment or that point to say that you can't read Judge Burns' comments that he had a reasonable doubt about Mr. Arguetta's motive simply to be about whether he had a reasonable doubt about whether he was suffering from delusions. I don't think Judge Burns had any doubt that Mr. Arguetta had delusions. And then I think he thought it was a closer question whether he also then thought he had the intent to enter custody. And finally, on sort of the harmlessness issue, I think the government is essentially looking at the evidence in the light most favorable to it and then drawing every inference in its favor and then saying the evidence is overwhelming. But of course, that's not the proper standard. If the court has any... Does it have any further questions? Thank you, Mr. Keller. We thank both counsel for the argument. United States v. Arguetta Rosales is subpoenaed.
judges: Foote, Fisher, Bybee